IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN SEARLES, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 07 C 3137 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| ) | |
| DONALD GAETZ[1], Warden, Menard ) | |
| Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner John Searles' petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254(d)(1). For the following reasons, the Court denies Searles' habeas petition.

## **BACKGROUND**

The Court adopts the underlying facts set forth by the Illinois Appellate Court in *People v. Searles*, No. 1-02-2598 (Ill.App.Ct. Mar. 31, 2004) (unpublished); *People v. Searles*, No. 1-05-2203 (Ill.App.Ct. Aug. 15, 2006) (unpublished) because Searles does not present clear and convincing evidence challenging those facts . *See* 28 U.S.C. Section 2254(e)(1); *see also Virsnieks v. Smith*, 521 F.3d 707,714 (7th Cir. 2008).

**I. Factual Background**

On June 24, 2000, Petitioner John Searles ("Searles") and Vanessa Padin ("Padin") were at the home of Evelyn Rivera ("Rivera"), a women whom Searles dated. Rivera planned to leave for Puerto Rico the next day and so the three discussed the idea of throwing a party for her. The only

---

[1] Pursuant to Fed.R.Civ.P. 25(d) the Court has substituted Donald Gaetz, the current warden of Menard Correctional Center, as the Respondent.

complication was that they needed money. Rivera told Searles and Padin that she was dating a man named Anthony Leyva ("Leyva") and she suggested that when he arrived later that day they could rob him. Searles suggested that they carjack Leyva, threaten him with a knife and take his money. Rivera then gave Searles a knife with a curved shape blade that was several inches long with several spikes around the handle.

At trial, Padin testified that when Leyva arrived at Rivera's house, Searles attempted to get into the passenger side of Leyva's car but the door was locked. Having failed at his first attempt, Searles went inside the house and told the others about his aborted carjacking. Later, Rivera convinced Leyva to drive Searles and Padin to the CTA. Searles, Padin and Rivera then got into Leyva's car with the intention of robbing him. After driving for a short distance, Searles ordered Leyva to stop the car. Searles then placed the knife that Rivera had given him earlier in the day against Leyva's neck and demanded "give me your money or I'm going to kill you." *People v. Searles*, No. 1-02-2598, at 3 (Ill.App.Ct. Mar. 31, 2004) (unpublished). At this point, Rivera and Padin got out of the car and ran to Rivera's house. Sometime later, Searles returned to Rivera's house and told Padin and Rivera that he had stabbed Leyva multiple times.

At trial, forensic pathologist, Dr. James Filkins, detailed Leyva's stab wounds. He testified that one wound severed Leyva's carotid artery and jugular vein on the right side of his neck. Leyva also had a vertical abrasion and puncture wound on the right side of his back, a slanting abrasion on his abdomen, and a cluster of abrasions on his right shoulder where his skin has been punctured. Dr. Filkins testified that he found cuts on Leyva's hands consistent with defensive wounds.

At trial, Searles testified on his own behalf. He stated that he was engaged to Rivera and he was jealous because Rivera was also seeing Leyva. Searles testified that on June 24, 2000, he along

2

with Rivera and Padin, smoked P.C.P. cigarettes made with embalming fluid. The three of them discussed plans for a party and Rivera suggested that they rob Leyva whom she knew to carry $200 to $500 in cash. When Leyva arrived at the house, Searles tried to enter Leyva's car but the door was locked. Searles then went inside the house and told the others to forget about the plan because Leyva was aware of what was happening. Rivera then told Searles that she and Leyva would drop him off at the C.T.A. Searles accepted the ride because he wanted to leave.

Searles testified that during the ride he placed the knife he had been carrying between the car seats and told Leyva to stop driving because, " he wanted the knife out of the car and he didn't want to be there with them anymore." *People v. Searles*, No. 1-02-2598, at 4. Searles testified further that Leyva then began to struggle with him for the knife, and that while the car was still in motion Searles attempted to reach for the gears, the car jerked, and the knife came back and hit Leyva in the neck. Searles stated that he may also have cut Leyva in the side, because Leyva "pulled the knife down," and Searles "pulled it back." *People v. Searles*, No. 1-02-2598, at 5. Searles admitted on cross-examination that the knife was initially in a leather sheath and that the sheath had to be manually unbuckled and removed before he placed the knife near Leyva's neck.

At trial, the prosecution presented Searles' videotaped statement to police investigators on the night of his arrest. In his statement, Searles stated that he pulled the knife out, held it up, and told Leyva to get out of the car. Leyva then struggled for control of the knife. Searles told the investigators that he "was just trying to cut [Leyva] in the neck and get [Leyva] to * * * let go of the knife and let [Searles] go already." *People v. Searles*, No. 1-02-2598, at 5.

3

## II. Procedural Background

On June 13, 2002, a jury in the Circuit Court of Cook Count convicted Searles of one count of first-degree murder and one count of attempted armed robbery in the stabbing death of seventy-two year old Anthony Leyva. (*See* Resp.'s Rule 5 Exs., Ex. D). The trial judge sentenced Searles to consecutive terms of imprisonment of sixty years and fifteen years, respectively. *See id*. On direct appeal, Searles argued that: 1) the trial judge erred in failing to instruct the jury on involuntary manslaughter; 2) the trial judge erred in failing to sua sponte instruct the jury on conspiracy to commit robbery; 3) the sentence imposed was excessive; 4) the trial court improperly relied on facts implicit in the offense as aggravating factors for sentencing; and 5) the trial court erred in ordering Searles' sentences to be served consecutively. (*See* Resp.'s Rule 5 Exs., Exs. E, F, G, H). After the Illinois Appellate Court affirmed Searles' conviction and sentence on March 31, 2004, Searles filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois raising the same issues. (*See* Resp.'s Rule 5 Exs., Exs. A, I). The Supreme Court of Illinois denied his PLA on October 10, 2004. (*See* Resp.'s Rule 5 Exs., Ex. J). Searles then filed a petition for writ of certiorari in the United States Supreme Court, which was denied on December 1, 2004. (*See* Habeas Pet., at 2)

On May 10, 2005, Searles filed a petition for post-conviction relief pursuant to 725 ILCS 5/122-1, *et seq,*. (*See* Resp.'s Rule 5 Exs., Ex. K). Searles argued that: 1) his trial counsel was ineffective for failing to investigate his fitness for trial; 2) his appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel; and 3) his right to due process was violated when he was forced to rush to trial with a broken jaw. *See id*. The trial court dismissed the petition without granting a hearing. (*See* Resp.'s Rule 5 Exs., Ex. L). Searles appealed the trial court's dismissal, arguing that he had stated claims for ineffective assistance of counsel as to both his trial

counsel and his appellate counsel. (*See* Resp.'s Rule 5 Exs., Ex. M). The Illinois Appellate Court affirmed the trial court's dismissal on August 15, 2006. (*See* Resp.'s Rule 5 Exs., Ex. P). Searles filed a PLA to the Illinois Supreme Court, which was denied on December 1, 2006. (*See* Resp.'s Rule 5 Exs., Exs. Q, R).

On May 27, 2007, Searles filed the present pro se habeas petition pursuant to 28 U.S.C. Section 2254(d)(1). Searles asserts the following habeas claims: 1) he was denied a fair trial when the trial judge failed to instruct the jury on involuntary manslaughter and conspiracy to commit robbery; 2) his sentence is unconstitutional; 3) his constitutional rights were violated when the judge relied on facts that were inherent in the offense to aggravate his sentence; 4) ineffective assistance of trial counsel for failing to investigate his fitness for trial; and 5) ineffective assistance of appellate counsel for failing to raise the ineffectiveness of trial counsel on direct appeal. (*See* Habeas Pet., at 5-6).

## **LEGAL STANDARDS**

### I. Habeas Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Calloway v. Montgomery*, 512 F.3d 940, 943 (7th Cir. 2008). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite ours." *Id*. at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id*. at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Williams*, 529 U.S. at 410 (an *unreasonable* application of federal law is different from an *incorrect* application of federal law) (emphasis in original). To be considered objectively unreasonable, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Gilbert v. Merchant*, 488 F.3d 780, 790 (7th Cir. 2007) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)). Put differently, to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances of the case." *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006).

## II. Procedural Default

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies available to him in state court. *See Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). Specifically, a habeas petitioner must fully and fairly present his federal claims to the state courts before he files his federal habeas petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008). Moreover, a "habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004); *see also Crockett v. Hulick*, 542 F.3d 1183, 1192 ( 7th Cir. 2008). As required,

6

Searles has pursued each of the claims he raises in his habeas petition through one full round of the Illinois's review process. As such, he has not procedurally defaulted any of his claims.

## DISCUSSION

### I. Failure To Give Instructions On Involuntary Manslaughter And Conspiracy To Commit Robbery

The Court first addresses Searles' habeas claim that the trial court erred in denying his request to instruct the jury on involuntary manslaughter, and that the court *sua sponte* should have instructed the jury on conspiracy to commit robbery. Petitioner alleges that these are lesser included offenses of first-degree murder and attempt robbery respectively.

As a general rule, "the failure of a state trial court to instruct the jury on a lesser included offense does not implicate a federal constitutional question and will not be considered in a federal habeas corpus proceeding." *Reeves v. Battles*, 272 F.3d 918, 920 (7th Cir. 2001); *see also Gilmore v. Taylor*, 508 U.S. 333, 334 (1993) ("instructional errors of state law generally may not form the basis for federal habeas relief."); *United States ex rel. Walters v. Bensinger*, 507 F.2d 103, 105 (7th Cir. 1974) ("[I]nstructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues."). "In a habeas action, the question is not whether the failure to instruct on a lesser included offense was correct or incorrect under state law, but rather whether failure to do so constituted a defect so fundamental that it results in a complete miscarriage of justice or omission inconsistent with the standards of fair procedure." *Reeves*, 272 F.3d at 920. Put another way, to be cognizable on habeas review, Searles must argue that the state court's failure to instruct the jury of a lesser included offense resulted in a conviction that violated his right to due process. *See id*. A trial court does not err in refusing to give an instruction where credible evidence in the record would not support a verdict based on the omitted instruction. *Wilson v. McCaughtrey*, 994

F.2d 1228, 1238 (7th cir. 1993). Because Searles asserts that the trial court erred in omitting an instruction, his burden is "especially heavy" because "[a]n omission or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

**A. Instruction For Involuntary Manslaughter**

In his habeas petition, Searles fails to establish that the denial of his request for an instruction on involuntary manslaughter resulted in a wrongful conviction and violated his due process rights. A trial court's refusal to tender an instruction unsupported by sufficient evidence is not error. *See Reeves*, 272 F.3d at 920 (finding that trial court's failure to tender involuntary manslaughter instruction did not violate due process where evidence established that defendant acted intentionally not recklessly). In Illinois the basic difference between involuntary manslaughter and first degree murder is the mental state of the perpetrator. *See People v. Divincenzo*, 700 N.E.2d 981, 987 (Ill. 1998). While first-degree murder requires that a person "know that his acts create a strong probability of death or great bodily harm," involuntary manslaughter is proven when a person recklessly acts in a manner that is likely to cause death or great bodily harm to another. *Id*.

For Searles to have been entitled to an instruction on involuntary manslaughter, he must identify evidence in the record that supports an inference that he acted recklessly rather than intentionally. *See Reeves*, 272 F.3d at 920-921 (finding defendant was not denied due process by court's refusal to tender involuntary manslaughter instruction, where evidence established that defendant repeatedly kicked victim in the head); *see also Armstead v. Frank*, 383 F.3d 630, 632 (7th Cir. 2004) (finding state court properly denied instruction on lesser-included offense because defendant's testimony was "not legally sufficient to prevent criminal liability for murder").

To support his request for an involuntary manslaughter instruction, Searles relies on his testimony at trial, claiming that the victim's throat was accidentally cut when the car jerked during a struggle over the knife; however, Searles' testimony also establishes that he took out a knife, removed it from its sheath, and then placed it near the victim's neck while the victim was driving. There was direct evidence at trial in the form of Searles' own statement that he "was just trying to cut [Leyva] in the neck and get [Leyva] to * * * let go of the knife and let [Searles] go already." *People v. Searles*, No. 1-02-2598, at 5. At the very least, this conduct establishes that the petitioner intentionally created a strong probability of grievous bodily harm to the victim. Furthermore, the evidence demonstrates that Searles acted intentionally, not recklessly. Searles sliced the victims throat and stabbed him multiple times in his side and shoulder. Given such substantial evidence of Searles' intentional acts in causing the victim's death, the trial court's refusal to instruct on involuntary manslaughter did not violate the Searles' due process rights.

## B. Instruction For Conspiracy To Commit Robbery

Next, Searles claims that the trial court *sua sponte* should have tendered an instruction to the jury on conspiracy to commit robbery. Petitioner takes the position that conspiracy to commit robbery is a lesser included offense of attempt robbery. This position is without merit because, under Illinois law, conspiracy to commit robbery is not a lesser-included offense of attempt robbery, and this legal conclusion is not subject to further review by the Court on Searles' habeas corpus petition.

Under Illinois law, "a defendant may not be convicted of an offense for which he has not been charged," unless the uncharged crime is a lesser-included offense. *People v. Hamilton*, 688 N.E.2d 1166, 1169 (Ill. 1997). In Searles' case, the Illinois appellate court stated,

9

> An offense is deemed an included offense only if the instrument charging the greater offense sets out, at a minimum, the main outline of the included offense…. In this case, the indictment charging the offense of attempted armed robbery… [did] not set out an essential element of conspiracy, i.e., that defendant had an agreement with codefendants that an offense be committed. Based upon the charging instrument, conspiracy was not a lesser included offense of the attempted robbery charge, and the trial court did not err by refusing to submit such an instruction to the jury.

*People v. Searles*, No. 1-02-2598, at 9 (Ill.App.Ct. Mar. 31, 2004) (unpublished). Thus, as a matter of state law, conspiracy to commit armed robbery is not a lesser included offense of attempt robbery and this conclusion is not subject to further interpretation on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1996) ("It is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."); *Lechner v. Frank*, 341 F.3d 635, 641 (7th Cir. 2003) ("State courts are the ultimate expositors of their own laws and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statute by the courts of that state except in extreme circumstance."). Therefore, Searles' constitutional rights were not violated by the trial judge's failure to instruct the jury on conspiracy to commit robbery.

## II. Petitioner's Sentence

### A. Statutory Sentencing Under Illinois Law and Eighth Amendment Violation

Next, Searles brings two habeas claims based on his prison sentence. Searles first claims that his sentence is excessive and that it violates the Eighth Amendment to the United States Constitution. This type of claim is generally not cognizable on habeas review. "A federal court will not normally review a state sentencing determination which ….falls within the statutory limit," except if a state's sentencing scheme is so "extreme and grossly disproportionate to the crime" that

it violates the Eighth Amendment. *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997) (quoting *Gleason v. Wellborn*, 42 F.3d 1107, 1112 (7th Cir. 1994)).

### i. Statutory Sentencing Under Illinois Law

Searles was sentenced to sixty years' imprisonment for murder and fifteen years' imprisonment for attempted armed robbery to be served consecutively. His sentence falls within all applicable Illinois state law sentencing guidelines. Illinois statute provides that a sentence for first-degree murder "shall be not less than 20 years and not more than 60 years." 730 ILCS 5/5-8-1(a). A sentence for attempt robbery "shall be not less than 4 years and not more than 15 years." 720 ILCS 5/18-2(b) (armed robbery is a Class X felony); 720 ILCS 5/8-4(c)(2) (attempt to commit Class X felony is Class 1 felony); 730 ILCS 5/5-8-1(a)(4) (sentence for Class 1 felony). Because the petitioner was convicted of murder, his sentences were required to run consecutively. 730 ILCS 5/5-8-4(a).

Additionally, Illinois code provides that when certain aggravating factors are present at the time of the offense, the court may impose an extended term sentence. One such aggravating factor, applicable to Searles' case, is that the victim was over sixty years of age. 730 ILCS 5/5-5-3.2(b)(4). The minimum extended term sentence for first-degree murder is sixty years with a maximum sentence of 100 years, and the minimum extended term sentence for attempt robbery is fifteen years with a maximum sentence of thirty years. 730 ILCS 5/5-8-2(a)(1).

Despite the trial judge's authority to sentence Searles to an extended term of up to one hundred and thirty years imprisonment, the judge specifically declined to impose such a sentence. Instead, he chose to consider the victim's age as an aggravating factor when applying the standard, non-extended sentencing range for first-degree murder and attempt robbery. After hearing matters

in aggravation and mitigation, the trial court sentenced Searles to sixty years imprisonment for his murder conviction to be served consecutively with a fifteen year sentence for attempt armed robbery. Searles' sentences are within the Illinois' statutory guidelines, and therefore, absent a showing that his sentences are unconstitutional, they are not subject to federal habeas corpus review. *See Koo,* 124 F.3d at 875; *Gleason*, 42 F.3d at 1112.

### ii. Cruel And Unusual Punishment (Eighth Amendment)

Next, Searles claims that his sixty year sentence for murder and his fifteen year sentence for attempt armed robbery are unconstitutional because they violate the Eighth Amendment prohibition against cruel and unusual punishment. To establish a Eighth Amendment violation, Searles must demonstrate that his sentence is "extreme and grossly disproportionate" to his offense of conviction. *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences [are] exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-290 (1983).

The Supreme Court has held it constitutionally permissible, in the presence of aggravating factors, for states to execute convicted murders. *See Blystone v. Pennsylvania*, 494 U.S. 299, 301 (1990). Additionally, the Supreme Court has upheld the imposition of a life sentence without the possibility of parole for a non-violent narcotics conviction. *See Harmelin*, 501 U.S. at 1003-04 (holding that a life sentence for possession of 650 grams of cocaine was constitutional because of the potential link between cocaine and violence.)

Here, in sentencing Searles to a seventy-five year sentence for murder and attempt armed robbery, the trial court noted that the victim was significantly over the age of sixty, that the crime was premeditated and part of a plan to rob the victim, and that Searles armed himself with a

particularly gruesome weapon which he used to repeatedly stab an elderly gentleman**.**  In light of Supreme Court precedents, Searles' seventy-five year sentence falls well within the bounds permitted by the Constitution.  Searles' sentence is not unusual for such a violent crime, and his claim that his sentence constitutes cruel and unusual punishment is without merit.

### B.  Facts That Are Inherent In The Offense Used In Aggravation

Searles' second habeas claim relating to his sentence is that the trial court improperly relied on elements that were inherent in the charged offenses to extend his sentence.  Searles claims that in imposing his prison sentence for murder, the trial court considered the fact that the murder was part of a plan to rob the victim as an aggravating factor and that this was improper.   This challenge, however, is not cognizable on habeas review because it presents an issue of Illinois sentencing law.  *See Estelle*, 502 U.S. at 67-68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United states."); *see also Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) ("errors of state law in and of themselves are not cognizable on habeas review").

Furthermore, even if Searles' claim was cognizable, it would fail nonetheless.  While Illinois' courts have held that a factor implicit in a particular offense should not be considered in aggravation at sentencing, the doctrine was never meant to be rigidly applied so as to "restrict a sentencing judge in his consideration of otherwise relevant sentencing factors." *People v. Estrella*, 524 N.E.2d 707, 710 (Ill. App. 1988); *see also United States ex rel. Jordan v. Bosse*, 41 F.Supp.2d 812, 817 (N.D. Ill. 1999) (finding trial court's consideration of victim's bodily harm as aggravating factor at sentencing for aggravated battery with a firearm, even where it was an element inherent in the offense of conviction, was not inappropriate and did not render sentence unconstitutional).

13

Therefore, Searles' claim that the trial judge improperly considered aggravating factors at sentencing is not a cognizable ground for federal habeas relief.

### III. Ineffective Assistance of Counsel

Searles' fourth and final habeas claim is that both his trial counsel and his appellate counsel were ineffective. Specifically, Searles asserts that his trial counsel was ineffective for failing to investigate his fitness for trial, and his appellate counsel was ineffective for failing to raise this issue on direct appeal. The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The clearly established Supreme Court law that applies to Searles' ineffective assistance claims is set forth in *Strickland v. Washington* 466 U.S. 668 (1984). To establish constitutionally ineffective assistance of counsel, Searles must show that his attorney's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceedings would have been different." *Id*. at 688, 694 ("a reasonable probability is a probability sufficient to undermine confidence in the outcome"); *Watson v. Anglin*, No. 07-3602, 2009 WL 804661 at *2 (7th Cir. March 30, 2009). If Searles fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See Strickland*, 466 U.S. at 697.

In the context of ineffective assistance of appellate counsel claims, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel did raise. *See Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). To establish the *Strickland* prejudice prong, Searles must show that there is a reasonable

probability that appellate counsel's failure to raise an issue would have resulted in the reversal of his conviction or an order for a new trial. *See Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003).

Searles has a due process right not to be tried if he is unable to assist in his own defense. *See Pate v. Robinson*, 383 U.S. 375, 358 (1966). This does not, however, mean that the Constitution necessarily forbids trial of the mentally ill. *See United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984) ("Not every manifestation of mental illness demonstrates incompetence to stand trial; rather the evidence must indicate a present inability to assist counsel or understand the charges."). In determining his fitness to stand trial, the question is whether Searles, at the time of his trial, was able "to consult with his lawyer with a reasonable degree of rational understanding-and whether he [had] a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). When competence to stand trial is examined after the fact, the fitness determination should be based on "evidence of [Searles'] irrational behavior, his demeanor at trial, and any prior medical opinion." *Drope v. Missouri*, 420 U.S. 162, 180 (1975). For Searles to prevail on his habeas claim that his trial counsel was ineffective in failing to investigate his fitness for trial, there must be "a reasonable probability that [he] was not fit, calling into question the integrity of the adversarial process." *Strickland*, 466 U.S. at 694; *see also Eddmonds v. Peters*, 93 F.3d 1307, 1317 (1996). The Court's review of the Illinois Appellate Court's decision regarding Searles' fitness to stand trial is deferential. *See Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009).

Here, Searles has not come forth with clear and convincing evidence to rebut the state courts' factual determinations regarding his fitness to stand trial. *See* 28 U.S.C. § 2254(e)(1). The Illinois Appellate Court traced, in considerable detail, Searles' documented history of mental illness,

including his treatment at Children's Memorial Hospital when he was twelve, and his stay at Hargrove Mental Hospital when he was fourteen because of his mother's belief that he was suicidal. *See People v. Searles*, No. 1-05-2203, at 4 (Ill.App.Ct. Aug. 15, 2006) (unpublished). The court also discussed Searles' history of drug use. *See id*. Ultimately, the court concluded that Searles had not demonstrated a bona fide doubt as to his competency because his psychological history related solely to his childhood problems and there was no indication that any of these problems continued into adulthood. *See id*. at 6-7. The court further stated that there was no indication that Searles was being medicated at the time of his trial or that anything affected his ability to understand the proceedings or participate in his defense. *See id*. Based on this record, it is evident that the state court's decision that Searles' had not demonstrated that he was unfit was neither an unreasonable determination of the facts nor an unreasonable application of the relevant Supreme Court law. *See People v. Searles*, No. 1-05-2203, at 5-7. The record does not demonstrate a reasonable probability that Searles was not fit for trial, and therefore he has not demonstrated any prejudice from his trial counsel's alleged failure to investigate his fitness.

Furthermore, if the record does not establish a bona fide doubt as to Searles' competency, then Searles' appellate counsel could not have rendered a deficient performance by failing to raise the issue on direct appeal. *See Sturgeon*, 552 F.3d at 612; *see also Watson*, 2009 WL 804661 at *6 (if argument petitioner wanted appellate counsel to make on direct appeal was not patently meritorious, then petitioner is not entitled to habeas relief on ground that appellate counsel's failure to raise argument was ineffective assistance of counsel). In other words, Searles' appellate counsel was not ineffective for failing to bring a claim that had little or no merit in comparison with counsel's other arguments on appeal. Therefore, Searles' final habeas claim is denied.

## CONCLUSION AND ORDER

For the reasons stated, the Court denies Searles' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1) is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:   May 6, 2009